# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK
## CENTRAL ISLIP

GAETANO RUSSO, individually and on behalf of all others similarly situated,

           Plaintiff,

- against -

HYUNDAI MOTOR AMERICA,

           Defendant

2:24-cv-01914

Class Action Complaint

Jury Trial Demanded

Plaintiff Gaetano Russo ("Plaintiff") alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1.    Hyundai Motor America ("Defendant") manufactures, markets, leases, and sells automobiles under the Hyundai and Genesis brands ("Class Vehicles"), such as the 2013 Hyundai Genesis 3.8 Sedan.



2.    Defendant markets its vehicles with the representations that they are "reliable", "artfully […] designed" "luxury performance sedans", backed by its "warranty – America's Best," which "gives [Class Vehicle] owners a high level of confidence in Hyundai quality."

> It's funny how quickly things change. Just a few years ago, the idea of Hyundai offering a luxury performance sedan worthy of comparison against some of the most admired names in the automotive world might have raised some eyebrows. But here's the thing about luxury performance sedans: They're ultimately judged on very straightforward criteria. How artfully they are designed. How brilliantly they perform. And how intelligently they integrate new technologies.
>
> Deliver the goods, and drivers with an open mind will come to the same conclusion reached by the automotive press, who named Genesis the North American Car of the Year.[1] *Kelley Blue Book* had this to say about our latest addition to the Genesis line: "Complementing its premium character with a megadose of pure performance, the Genesis 5.0 R-Spec served notice that Hyundai is ready to seriously raise the stakes in the sport-luxury sedan game."[2]
>
> Of course, there is one opinion we value above all others: Yours. We invite you to test drive a 2013 Hyundai Genesis. And experience luxury in a brand new way.

It's funny how quickly things change. Just a few years ago, the idea of Hyundai offering a luxury performance sedan worthy of comparison against some of the most admired names in the automotive world might have raised some eyebrows. But here's the thing about luxury performance sedans: They're ultimately judged on very straightforward criteria. How artfully they are designed. How brilliantly they perform. And how intelligently they integrate new technologies.

Deliver the goods, and drivers with an open mind will come to the same conclusion reached by the automotive press, who named Genesis the North American Car of the Year. *Kelley Blue Book* had this to say about our latest addition to the Genesis line: "Complementing its premium character with a megadose of pure performance, the Genesis 5.0 R-Spec served notice that Hyundai is ready to seriously raise the stakes in the sport-luxury sedan game."

Of course, there is one more opinion we value above all others: Yours. We invite you to test drive a 2013 Hyundai Genesis. And experience luxury in a brand new way.

**LASTING IMPRESSIONS**
According to recent *Kelley Blue Book*® Market Intelligence data, brand loyalty for Hyundai surpassed Honda and Toyota at the end of 2011 on kbb.com, raising Hyundai's brand loyalty to the Number 1 spot in the industry.[1] That's pretty remarkable, given all the competition today among the world's automakers. It's made everybody's cars better, ours included. As *Motor Trend* observed, "Somewhat under the radar, Hyundai has steadily improved the quality of its growing lineup, building cars that are as reliable and often rewarding as they are affordable."[2]

**DISTINCTIVE DESIGNS**
Look at the 2013 Hyundai line-up, and the first thing you're likely to notice is the attention we've paid to design. Inside and out, there's a character that comes through. A character that somehow manages to balance sophistication with simplicity. On the road, it reveals itself in the kind of performance that combines powerful response with remarkable fuel efficiency.

**NEW POSSIBILITIES**
We've also made huge investments into making our vehicles among the safest on the road. In 2012, the Insurance Institute for Highway Safety awarded six Hyundai models Top Safety Pick honors.[3] Then, there's our warranty – America's Best. It gives our owners a high level of confidence in Hyundai quality. We're pleased that our approach to automotive innovation is earning industry accolades and loyal customers. But what matters most to us is your opinion. So visit an authorized Hyundai dealer today. Test drive a 2013 Hyundai. And experience what happens when new thinking opens up new possibilities.

## LASTING IMPRESSIONS

According to a recent *Kelley Blue Book*® Market Intelligence data, brand loyalty for Hyundai surpassed Honda and Toyota at the end of 2011 on kbb.com, raising Hyundai's brand loyalty to the Number 1 spot in the industry. That's pretty remarkable, given all the competition today among the world's automakers. It's made everybody's cars better, ours included. As *Motor Trend* observed, "Somewhat under the radar, Hyundai has steadily improved the quality of its growing lineup, building cars that are as reliable and often rewarding as they are affordable."

## DISTINCTIVE DESIGNS

Look at the 2013 Hyundai line-up, and the first thing you're likely to notice is the attention we've paid to design. Inside and out, there's character that comes through. A character that somehow manages to balance sophistication with simplicity. On the road, it reveals itself in the kind of performance that combines powerful response with remarkable fuel efficiency.

## NEW POSSIBILITIES

We've also made huge investments into making our vehicles among the safest on the road. In 2012, the Insurance Institute for Highway Safety awarded six Hyundai models Top Safety Pick honors. Then, there's our warranty – America's Best. It gives our owners a high level of confidence in Hyundai quality. We're pleased that our approach to automotive innovation is earning industry accolades and loyal customers. But what matters most to us is your opinion. So visit an authorized Hyundai dealer today. Test drive a 2013 Hyundai. And experience what happens when new thinking opens up new possibilities.

3.     The description of the Class Vehicles tells consumers they are built to last and are capable of remaining in good condition for years to come, and therefore will be free of clear coat and paint damage for many years.

## I.     CLASS VEHICLES MADE WITH DEFECTIVE PAINT AND/OR CLEAR COAT

4.     Despite the marketing of the Class Vehicles as built to last and capable of remaining in good condition for years to come, they did not remain free of premature clear coat and paint damage.

5.     The paint and/or clear coat on the Class Vehicles were defective, in that they were of poor quality and/or not properly or adequately applied, which caused (1) the clear coat to weaken and/or deteriorate and (2) the paint to oxidize, become discolored, and peel off.[1]

---

[1] Pictures of Plaintiff's Class Vehicle are included below.



 

6.    According to J.D. Power:

>Oxidation is a chemical process that causes vehicle paint to break down over time from exposure to heat and oxygen. It is essentially a form of corrosion in which paint loses its oil content, and as a result, dries out. This process is gradual, but the effects can be severe.[2]

7.    Oxidation causes paint to turn dull, become faded, and in the case of light-colored paint, like cream and white, take on a yellow/orange color.

8.    Ultimately, it results in "the deterioration of the clearcoat, which can permanently dissolve the paint and make the body of the vehicle susceptible to rust."[3]

---

[2] Jessica Shea Choksey, J.D. Power, *How to Remove Oxidation From Car Paint* (last visited November 20, 2023).

[3] *Id.*

9.     Many individuals have complained online about the Class Vehicles, the clear coat/paint defect, and Defendant's handling of the situation.

10.     Those who have complained on sites like *genesisowners.com* and *carcomplaints.com* have stated that they reported the clear coat/paint damage and related issues to Defendant, only to be ignored and have to take care of the damage themselves, with Defendant taking little to no responsibility.

11.     The cost of repairs, depending on the extent of the damage, could range from $200 to $1,800, if not more.



paint peeling on front and rear bumper

I haven't had my car long at all. 2013 Hyundai genesis. what begin as a little circle of paint peeling has now grown into several big areas on my front bumper and are an eye sore. This troubles me grately because I don't pay a monthly note to drive around looking like trash. and I want it fixed by the maker. I was relieved for a moment to know I wasn't alone with this problem. please tell me how I can get dealership to fix this.









I just purchased this car and was doing the final rinse at the car wash when I noticed the clear-coat paint on the rocker panels on both of the rocker panels beginning to peel off. This should never happen and is definitely a factory defect. Are there any recalls on this issue from Hyundai?

paint on rear bumper peeling

I HAD THE BUMBER REPAINTED FOR $200

ONE YEAR LATER SAME PROBLEM THEY REPAINTED AGAIN AT NO CHARGE

NOW IN 2016 THE BUMPER IS BUBBLING AGAIN AS WELL AS THE FRONT BUMPER IS ALL DISCOLORED. WILL TAKE IT BACK TO HYUNDAI AGAIN[. ]THIS IS SO FRUSTRATING. I WILL NEVER BUY A HYUNDAI PRODUCT AGAIN



The paint clear coat came off of the rocker panels on the bottom of the car. Paint faded terribly on the back bumper of the vehicle. Dealership should pay to have this vehicle repainted as this issue continues to happen to more and more people.



Common problem. Same as previously reported. Paint is de-laminating between primer and top coat.

The paint is peeling along front bumper, front grill but not the hood, nor the the front quarter panels. The paint peeling on both side rocker panels and the rear bumper is the worst. I've seen other Genesis and the don't seem to have the issue on the red or gray or black, but my car looks like crap. It's the clear coat. Plus I have rust spots showing up all over by the roof where windshield is at and hood.



Any plastic panel (front and rear bumper and both side rocker panels under the doors) the White Pearlcoat paint on my Genesis starts with a slight yellowing and then gets rapidly worse and the clearcoat comes off. My car is in absolute mint condition otherwise and this makes it look like its a car that is not taken care of. It's embarrassing to be seen driving it. I complained to dealer that I purchased it from new in 2013 (small dealer in Rosenberg, TX and another dealer (larger dealer in Houston). Both acted like they have never seen it before. I even showed them a Used Genesis on their own lot that was for sale that had the same problem (also



White Pearlcoat). They refused to do anything.

I contacted Hyundai and after much back and forth, they agreed to repaint the back bumper back in 2017 (car was still under the 5 yr. new car warranty). Well, it happened again and I had it repainted in 2019...Now it is with a body shop where they are repainting both bumpers and the rocker panels ($1,000 cash). I got estimates from others ranging from $1,400 - $1600). They have had the car for over 2 weeks and are having great difficulty getting the paint to match. The White Pearlcoat is a 3 step process and is very difficult to match correctly. It seems to also be the only color of paint that is experiencing this problem. It seems that Hyundai should stand behind this and fix it since it was a problem from day one when the cars were new.

Otherwise, I couldn't be happier with my car. It has been unbelievable!. Absolutely no other problems and just regular dealer maintenance at the scheduled service dates. I have 110K miles on it at this point and it actually still has the original brakes! I replaced tires at 55K with new Michelins and am due to replace them now. I am so sick about the way it appears due to the paint that I was going to trade it in but after car shopping and seeing the reality of car prices now, have decided to pay out of pocket to repaint, put tires on, (and probably brakes this Spring) and continue driving it another year.



I have my **Hyundai Genesis** for a bit over 3 years. I have <29K miles on the car and it has served me well, with ONE EXCEPTION.

The Hyundai Genesis has **quality issues specifically with their paint**. The roof

rails between the roof and the door frame had paint chipping off and the dealer agreed it was a defect and they would replace them. The original rails were painted white and the replacement ails are black. Take it or leave it, they would not paint them. This changes the look of the car and now it looks like an Optima. ***Disappointment #1!***

At the same time that I brought this in I pointed out 2 other quality/finish related issues. First, the bumper color had changed/faded. The clearcoat finish had discolored and was peeling off, YES peeling off. This is obvious to anyone looking at the car and further acknowledged by the dealer that they have seen and repaired several Genesis vehicles with the same issue. ***Disappointment 2!*** Lastly, the black panels between the doors had faded. According to the dealer they faded from the sun! Nothing further could be done without Hyundai approval.

I wrote Hyundai US Corporate. They advised me to take the car back to the dealer, get a quote and they would "work something out" with me. I took the car to the dealer and received a $1,785.36 quote to paint [t]he bumper and replace the black panels. When I called Hyundai corporate back with the info they offered the cost of the parts which was $916.86, and no labor. SO GENESIS BUYER BEWARE. HYUNDAI GENESIS DOES NOT STAND BEHIND THEIR PRODUCT. You WILL NOT enjoy the same level of service, respect and quality that we have been used to with other upscale automobiles.

I've owned Cadillac's, Audi's, Infiniti's and other upscale cars. I have never had paint peeling off, chipping and fading. **The Genesis is still a Hyundai!**



I have the same issue. I started having that issue right around 4 years after. They said it's not covered by the warranty. Did Hyundai pay for paint cost?

I saw other Genesis on streets with the same condition. I am not sure why they don't recall this.









I have a 2014 white Genesis.

For some strange reason, the bumpers, both front and rear kinda discolored a little within 3 years, turning noticeably yellowish, no amount of polishing solved the issue and is very noticeable when you compare the bumpers against the abutting body panels.

Paid for a respray and the issue seems to be solved... Perhaps they needed a thicker coat of paint on the PU bumpers?

TG Azeras had this issue too.

I've also had pain[t] bubbling, on the rear bumpers when water went between the paint protection film and the body work. Dealer insisted it wasn't a defect.



I have a 2013 Genesis that has the clear coat peeling off on the front and rear bumpers. The car, otherwise, has been terrific. I was considering purchasing a Genesis SUV, but do not want the same problem again with the paint.

12.   While most individuals have chosen to live with the defect, given the high repair costs, others have turned to independent technicians and auto shops to treat the affected areas and prevent further issues.

13.   Automobiles made with paint and clear coats that will function reliably and remain in good condition for years to come are available to consumers and are not technologically or commercially unfeasible.

## II.   CONCLUSION

14.   Defendant makes other representations and omissions with respect to the Class Vehicles which are false and misleading.

15.   Reasonable consumers must and do rely on a company to honestly and lawfully market and describe the components, attributes, features, and/or quality of a product, relative to itself and other comparable products or alternatives.

16.   The value of the Class Vehicle that Plaintiff purchased was materially less than its value as represented by Defendant.

17.   Defendant sold more of the Class Vehicles and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

18.  Had Plaintiff and proposed class members known the truth, they would not have bought the Class Vehicles or would have paid less for them.

19.  As a result of the false and misleading representations and omissions identified here, the Class Vehicles are sold at a premium price, approximately no less than $34,200.00, excluding tax and sales, higher than similar vehicles, represented in a non-misleading way, and higher than they would be sold for absent the misleading representations and omissions.

## JURISDICTION

20.  Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

21.  The aggregate amount in controversy exceeds $5 million, including any statutory or punitive damages, exclusive of interest and costs.

22.  Plaintiff is a citizen of New York.

23.  Defendant is a California corporation.

24.  Defendant has a principal place of business in California.

25.  The class of persons Plaintiff seeks to represent includes persons who are citizens of a different state from which Defendant is a citizen.

26.  The members of the proposed class Plaintiff seeks to represent are more than one hundred, because the Class Vehicles have been sold from dozens of authorized dealerships and pre-owned car dealers in New York.

27.   The Court has jurisdiction over Defendant because it transacts business within New York and sells the Class Vehicles to consumers within New York from authorized dealerships and pre-owned car dealers in this State.

28.   Defendant transacts business in New York, through the sale of the Class vehicles to citizens of New York from authorized dealerships and pre-owned car dealers in this State.

29.   Defendant has committed tortious acts within this State through the distribution and sale of the Class Vehicles, which is misleading to consumers in this State.

30.   Defendant has committed tortious acts outside this State by representing and selling the Class Vehicles in a manner which causes injury to consumers within this State by misleading them as to their attributes, features, components and/or quality, by regularly doing or soliciting business, or engaging in other persistent courses of conduct to sell the Class Vehicles to consumers in this State, and/or derives substantial revenue from the sale of the Class Vehicles in this State.

31.   Defendant has committed tortious acts outside this State by representing and selling the Class Vehicles in a manner which causes injury to consumers within this State by misleading them as to their attributes, features, components and/or quality, through causing the Class Vehicles to be distributed throughout this State, such that it expects or should reasonably expect such acts to have consequences in

this State and derives substantial revenue from interstate or international commerce.

## VENUE

32.    Venue is in this District with assignment to the Central Islip Courthouse because a substantial or the entire part of the events or omissions giving rise to these claims occurred in Suffolk County, which is where Plaintiff's causes of action accrued.

33.    Plaintiff purchased and/or used the Class Vehicle in reliance on the representations identified here in Suffolk County.

34.    Plaintiff first became aware the representations were false and misleading in Suffolk County.

35.    Plaintiff resides in Suffolk County.

## PARTIES

36.    Plaintiff Gaetano Russo is a citizen of Suffolk County, New York.

37.    Defendant Hyundai Motor America is a California corporation.

38.    Founded by Chung Ju-yung in 1967 as Hyundai Motor Company, Hyundai is a South Korean multinational automobile company, with offices and production plants across the globe.

39.    Between 2008-2016, Defendant sold Genesis models under the Hyundai brand.

40.    Starting in 2016, Genesis became a brand of its own, with an expanded

line of luxury models.

41.    Vehicles under the Hyundai and Genesis brands have an industry-wide reputation for safety, quality, and value.

42.    Plaintiff purchased his 2013 Hyundai Genesis 3.8 Sedan from Atlantic Hyundai, located at 193 Sunrise Hwy, West Islip, NY 11795, in September 2013.

43.    Plaintiff believed the Class Vehicle was built to last and capable of remaining in good condition for years to come, understood to mean it would remain free of clear coat and paint damage for many years.

44.    Plaintiff relied on Defendant's representations that the Class Vehicles were built to last and capable of remaining in good condition for years to come.

45.    Plaintiff bought the Class Vehicle because he expected it was built to last and capable of remaining in good condition for years to come, understood to mean it would remain free of clear coat and paint damage for many years because that is what the representations said and implied.

46.    As a result of the false and misleading representations, the Class Vehicles are sold at premium prices, approximately no less than $34,200.00, excluding tax and sales.

47.    Plaintiff relied on the words, descriptions, statements, omissions, and/or claims, made by Defendant or at its directions, in digital, print and/or social media, which accompanied the Class Vehicles and separately, through in-store, digital,

audio, and print marketing.

48.    Plaintiff was disappointed because he believed the Class Vehicles were built to last and capable of remaining in good condition for years to come, understood to mean they would remain free of clear coat and paint damage for many years.

49.    Plaintiff bought the Class Vehicle at or exceeding the above-referenced price.

50.    Plaintiff chose between Defendant's Class Vehicles and vehicles represented similarly, but which did not misrepresent their attributes, features, and/or components.

51.    Plaintiff paid more for the Class Vehicle than he would have had he known the representations and omissions were false and misleading, or would not have purchased it.

52.    The value of the Class Vehicle that Plaintiff purchased was materially less than its value as represented by Defendant.

## CLASS ALLEGATIONS

53.    Plaintiff seeks to represent the following class:

> All persons in New York who purchased the
> Class Vehicles in New York during the
> statutes of limitations for each cause of action
> alleged.

54.    Excluded from the Class are (a) Defendant, Defendant's board members,

executive-level officers, and attorneys, and immediate family members of any of the foregoing persons, (b) governmental entities, (c) the Court, the Court's immediate family, and Court staff and (d) any person that timely and properly excludes himself or herself from the Class.

55.    Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

56.    Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

57.    Plaintiff is an adequate representative because his interests do not conflict with other members.

58.    No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

59.    Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

60.    The class is sufficiently numerous and includes several hundred, if not thousand, people.

61.    This is because Defendant sells the Class Vehicles to consumers through dozens of authorized dealerships and pre-owned car dealers in the State Plaintiff is

seeking to represent.

62.   Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

## CAUSES OF ACTION

### COUNT I
### New York General Business Law ("GBL") §§ 349 and 350

63.   Plaintiff incorporates by reference paragraphs 1-19.

64.   The purpose of the GBL is to protect consumers against unfair and deceptive practices.

65.   The GBL considers false advertising and deceptive practices in the conduct of any trade or commerce to be unlawful.

66.   Violations of the GBL can be based on the principles of the Federal Trade Commission Act ("FTC Act") and FTC decisions with respect to those principles. 15 U.S.C. § 45 *et seq*.

67.   In considering whether advertising is misleading in a material respect, the FTC Act recognizes that the effect of advertising includes not just representations made or suggested by words and images, but also the extent to which [it] fails to reveal facts material in the light of such representations. 15 U.S.C. § 55(a)(1).

68.   Defendant's false and deceptive representations and omissions with respect to the Class Vehicles being built to last and capable of remaining in good condition for years to come, understood to mean they would remain free of clear

coat and paint damage for many years, are material in that they are likely to influence consumer purchasing decisions.

69.  Plaintiff paid more for the Class Vehicle than he would have had he known it is not actually built to last or capable of remaining in good condition for years to come, understood to mean it would remain free of clear coat and paint damage for many years.

70.  The Class Vehicles' marketing violated the FTC Act and thereby violated the GBL because it expressly states the Class Vehicles are "reliable", "artfully […] designed" "luxury performance sedans", backed by its "warranty – America's Best," which "gives [Class Vehicle] owners a high level of confidence in Hyundai quality", when this is false and/or misleading.

71.  The Product's marketing violated the FTC Act and thereby violated the GBL because it impliedly suggests the Class Vehicles are built to last and capable of remaining in good condition for years to come, understood to mean they would remain free of clear coat and paint damage for many years, when these statements and/or their implications are false and/or misleading.

72.  The marketing of the Product violated the FTC Act and thereby violated the GBL because the marketing statements and omissions created the erroneous impression the Class Vehicles are built to last and capable of remaining in good condition for years to come, understood to mean they would remain free of clear

coat and paint damage for many years.

73.   Violations of the GBL can be based on public policy, established through statutes, law or regulations.

74.   The marketing of the Class Vehicles violates laws, statutes, rules and regulations that are intended to protect the public.

75.   The marketing of the Class Vehicles violated the GBL because the representations and omissions are misleading.

76.   Plaintiff believed the Class Vehicles were built to last and capable of remaining in good condition for years to come, understood to mean it would remain free of clear coat and paint damage for many years.

77.   Plaintiff seeks to recover for economic injury and/or loss he sustained based on the misleading marketing of the Class Vehicles, a deceptive practice under the GBL.

78.   Plaintiff will produce evidence showing how he and consumers paid more than they would have paid for the Class Vehicles, relying on Defendant's representations and omissions, using statistical and economic analyses, hedonic regression, hedonic pricing, conjoint analysis and other advanced methodologies.

79.   As a result of Defendant's misrepresentations and omissions, Plaintiff was injured and suffered damages by his payment of a price premium for the Class Vehicle, which is the difference between what he paid based on its marketing, and

how much it would have been sold for without the misleading representations and omissions identified here.

## COUNT II
### Breaches of Implied Warranty of Merchantability and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

80.  The Class Vehicles were manufactured, identified, marketed and sold by Defendant and impliedly warranted to Plaintiff that they were built to last and capable of remaining in good condition for years to come, understood to mean they would remain free of clear coat and paint damage for many years.

81.  Defendant directly marketed the Class Vehicles to Plaintiff through its advertisements and marketing, through various forms of media, direct mail, product descriptions, and targeted digital advertising.

82.  Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing to directly meet their needs and desires.

83.  Defendant's representations about the Class Vehicles were conveyed in writing and promised they would be defect-free, and Plaintiff understood this meant they were built to last and capable of remaining in good condition for years to come, understood to mean they would remain free of clear coat and paint damage for many years.

84.  Defendant affirmed and promised that the Class Vehicles were built to

last and capable of remaining in good condition for years to come, understood to mean they would remain free of clear coat and paint damage for many years.

85.  Defendant described the Class Vehicles so Plaintiff and consumers believed they were built to last and capable of remaining in good condition for years to come, understood to mean they would remain free of clear coat and paint damage for many years, which became part of the basis of the bargain that they would conform to its affirmations and promises.

86.  Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Class Vehicles.

87.  This duty is based on Defendant's outsized role in the market for these types of Vehicles, a trusted company, known for its high-quality automobiles, honestly marketed to consumers.

88.  Plaintiff recently became aware of Defendant's breach of the Class Vehicles' warranties.

89.  Plaintiff provided or provides notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Class Vehicles' warranties.

90.  Defendant received notice and should have been aware of these issues due to complaints by third parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

91.  Defendant sold the Class Vehicles with the warranty they would be merchantable.

92.  The Class Vehicles did not conform to its affirmations of fact and promises due to Defendant's actions.

93.  The Class Vehicles were not merchantable because they were not fit to pass in the trade as advertised and did not conform to the promises or affirmations of fact made in marketing or advertising, because they were marketed as if they were built to last and capable of remaining in good condition for years to come, understood to mean they would remain free of clear coat and paint damage for many years.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

 **WHEREFORE**, Plaintiff prays for judgment:

1.  Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2.  Awarding monetary damages and interest;

3.  Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

4.  Other and further relief as the Court deems just and proper.

Dated:  March 15, 2024

Respectfully submitted,

/s/ Spencer Sheehan
Sheehan & Associates P.C.
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com

*Notice of Lead Counsel Designation:*

*Lead Counsel for Plaintiff*

Spencer Sheehan

Sheehan & Associates P.C.

*Counsel for Plaintiff*

**Certificate of Service**

I certify that on March 15, 2024, I served and/or transmitted the foregoing by the method below to the persons or entities indicated, at their last known address of record (blank where not applicable).

|  | CM/ECF | First-Class Mail | Email | Fax |
|---|---|---|---|---|
| Defendant's Counsel | ☐ | ☐ | ☐ | ☐ |
| Plaintiff's Counsel | ☒ | ☐ | ☐ | ☐ |
| Courtesy Copy to Court | ☐ | ☐ | ☐ | ☐ |

/s/ Spencer Sheehan